UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| vs. : | CRIMINAL NO. 3:01CR155(AVC) <br> CRIMINAL NO. 3:05CR286(AVC) |
| : | |
| CHERYL DEANDRADE | July 5, 2007 |

### MEMORANDUM IN AID OF SENTENCING

The defendant, Cheryl DeAndrade, respectfully submits this memorandum as an aid to the Court for sentencing and in support of her request for concurrent sentences of 18 months' incarceration in the above-captioned cases.

This sentencing hearing involves unusual circumstances. The defense and the government resolved two matters (a criminal charge and a supervised release violation) with an agreement to a specific sentence. See Ex. A, attached. As the Court knows, such agreements are not the norm in federal court. While the agreement is not binding on the Court, it represented considerable effort on the parts of both parties to reach a fair resolution and to eliminate the need for the litigation of various issues. Most significantly, the proposed sentence met, and continues to meet, the requirements of 18 U.S.C. § 3553(a) that the sentence be, in the express language of that statute, "sufficient, but not greater than necessary" to meet the goals of a criminal sentence.

United States v. Booker, 543 U.S. 220 (2005) made clear that the Sentencing Guidelines are advisory and that focus of federal sentencing is on the factors set forth in 18 U.S.C. § 3553(a). It is not sufficient for a sentencing court to consider only the Sentencing Guidelines in arriving at a sentence. The guidelines are but one factor. The Court underscored this point, repeatedly, in its recent decision in Rita v. United States, No. 06-574, 2007 U.S.Lexis 8269 (June 21, 2007). Rita decided that *appellate courts*, not district courts, may apply a presumption of reasonableness to a guideline sentence. Id. at * 23-24 ("We repeat that the presumption before us is an *appellate* court presumption . . . . the presumption applies only on appellate review . . . . the sentencing court does not enjoy the benefit of

- 2 -

a legal presumption that the Guidelines sentence should apply.") (emphasis in original). The sentencing court must give full consideration to all of the factors set forth § 3553(a). The Seventh Circuit explained this requirement as follows:

> [T]he Supreme Court has now expressly endorsed the rebuttable presumption of reasonableness for appellate review of a district court's sentencing decision. See Rita v. United States, No. 06-5754, 2007 WL 1772146 (June 21, 2007); United States v. Nitch, 477 F.3d 933, 937-38 (7th Cir. 2007); United States v. Gama-Gonzalez, 469 F.3d 1109 (7th Cir. 2006). The Rita decision emphasized that this is a standard for appellate review only. Rita, 2007 WL 1772146, at *9. The district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence.

United States v. Sachsenmaier, No. 05-3505, 2007 U.S.App. Lexis 15346 * 11-12 (7th Cir. June 28, 2007).

In the first sentencing hearing on this defendant's case back in August of 2006, the record reveals only that the Court calculated the guidelines and imposed, without further analysis, a sentence at the top of each guideline range to run consecutively. Tr. 8/3/06, p. 53-54. Despite the requirement in 18 U.S.C. § 3553(c) that the Court state its reasons for the sentence in open court, the Court expressed no reasons for how it arrived at that determination. Such an analysis is important in every sentencing, as explained twice in Rita by different justices. In the majority opinion, Justice Breyer wrote:

> By articulating reasons, even if brief, the sentencing judge not only assures reviewing courts (and the public) that the sentencing process is a reasoned process but also helps that process evolve. The sentencing judge has access to, and greater familiarity with, the individual case and the individual before him than the Commission or the appeals court. That being so, his reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors, can provide relevant information to both the court of appeals and ultimately the Sentencing Commission. The reasoned responses of these latter institutions to the sentencing judge's explanation should help the Guidelines constructively evolve over time, as both Congress and the Commission foresaw.

- 3 -

Rita, 2007 U.S. Lexis at * 35-36.

In his concurrence in Rita, Justice John Paul Stevens explained the importance of articulating reasons for the sentence.

> I think the judge's statement to the defendant, made at the time of sentencing, is an especially important part of the criminal process. If the defendant is convinced that what has been done in his case – that society has dealt with him fairly – the likelihood of his successful rehabilitation will surely be enhanced.

Id. at * 52-53.

In this case, where the parties had reached an agreement for a specific sentence (an unusual step, as noted above) that was vastly different from the sentence the Court imposed, the need for such an analysis was heightened. This is especially so under the law of this Circuit where the Court of Appeals has held that if two sentences would each satisfy the goals of 18 U.S.C. § 3553(a), the sentencing court must impose the lower sentence. United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006). Clearly, in this case, the government and the defendant believed that the proposed 18 month sentences were sufficient to meet those goals.

The defendant acknowledges that she faces an uphill battle at this re-sentencing. The Court has already imposed a sentence, and she seeks to have that changed. Focusing on the sentencing statute, § 3553(a), and not merely on the Sentencing Guidelines alone, there are compelling reasons to adopt the parties' agreement or something close to what the parties proposed.

In United States v. Crosby, 397 F.3d. 103 (2d Cir. 2005), the Second Circuit set forth the model for sentencing in the post-Booker world of federal sentencing. In a nutshell, there are now three types of sentences a court may impose. Id. at 111 n.9, 113. First, there are sentences within the applicable sentencing guideline range. Second, there are guideline sentences that result from permissible

departures pursuant to Chapter Five of the Sentencing Guidelines. Finally, there are non-guideline sentences which are sentences that do not fall within the guideline range and do not result from permissible departures. Id. Presumably, non-guideline sentences result from the consideration of prohibited factors or from circumstances that are in some fashion outside of the broad departure authority U.S.S.G. § 5K2.0 would otherwise encompass.

To determine a sentence under Crosby's model, a court must first calculate the defendant's guidelines and consider them. Next, the sentencing court must consider whether departures are appropriate. Third, the court must decide, after considering the guidelines and all of the factors set forth in 18 U.S.C. 3553(a), whether to impose a guideline sentence (including a sentence that results from permissible departures), or a non-guideline sentence. Id.

The Second Circuit recently expanded on these concepts and explained in United States v. Ministro-Tapia, 470 F.3d 137 (2d Cir. 2006), that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, it must choose the lower sentence. See id. at 142 (where a Guidelines sentence is "in equipoise with [a] below-the-range sentence," parsimony clause requires imposition of the lower sentence).

18 U.S.C. § 3553(a) sets forth four principal goals of a federal sentence: (1) to provide just punishment, (2) to provide specific deterrence, (3) to provide general deterrence, and (4) to provide needed educational, medical, vocational and other rehabilitative treatment in the most effective manner. Significantly, in considering these factors, the Court *must* consider the history and characteristics of the defendant and *must* impose a sentence that is the smallest that will achieve the goals set forth in § 3553(a). As expressed in the statute, the guiding principle is that the sentence must be "sufficient, but not greater than necessary" to achieve those goals enumerated in the statute.

- 5 -

Here, those goals could be met with a sentence of 18 months on each count to run concurrently. There are three reasons why this is so. First, after her commission of the offense, but prior to sentencing, Ms. DeAndrade took significant steps to address the behaviors that caused her to recidivate. She engaged in long-term, productive counseling. She completed 15 months of treatment at the Wheeler Clinic. PSR, para. 48. Her counselor noted her efforts to understand and address her improper behaviors. Ex B. In particular, her counselor described the Ms. DeAndrade's efforts as "consistent with excellent follow through of tasks," and she further described her as "motivated by a strong desire to fulfill all legal obligations" and to live a normal life. Ex B.

Second, Ms. DeAndrade accepted the advice of her counselor and agreed to take medication to modify her behavior. A psychiatrist at the Wheeler Clinic prescribed Zoloft and Risperdal for her. PSR, para. 41. She took this medication faithfully, and she intends to stay on it when she is ultimately released.

Finally, Ms. DeAndrade has a host of medical issues that make her incarceration more difficult than that of a typical inmate. In particular, she has a bladder condition that requires a certain type of drug, not available to her in the Bureau of Prisons. Consequently, she must to use a catheter on a daily basis. This is both humiliating and uncomfortable for her. During her incarceration, her bladder problems have progressed to the point that she required surgery.

Thus, turning to the statutory factors and considering Ms. DeAndrade's history and characteristics, an 18 month sentence of incarceration would constitute "just punishment" because it addresses the relatively modest size of the loss in this case (@$10,000), and it adequately takes into account her efforts to rehabilitate herself by engaging in therapy (counseling and medication). Those efforts separate her from a defendant who has not taken those steps. Moreover, those efforts reduce her

- 6 -

likelihood of recidivism.

As for deterrence, both general and specific, such a sentence should make an impact on both the public and Ms. DeAndrade. Eighteen months in jail is a significant period of incarceration for a $10,000 fraud and for a middle aged woman. No one should glean from that sentence that Ms. DeAndrade was not significantly punished. Indeed, the prosecuting authority was satisfied with that punishment when it entered into the agreement in this case.

Finally, such a sentence would further the goals of rehabilitating Ms. DeAndrade and providing her with medical care "in the most effective manner," as required by § 3553(a). Ms. DeAndrade's best hope of rehabilitation does not lie in a federal institution in Danbury. There is little there for rehabilitating a person. Her best hope is to pursue counseling and a regimen of psychiatric medications to control her illicit behaviors. She was doing well on that course in the time (15 months) between the offense and sentencing.

Ms. DeAndrade is now 46 years of age. She committed a $10,000 fraud. Given her efforts to address her problems, her health, and the relatively modest size of the loss in this case, a sentence of 18 months on each count to be served concurrently is "sufficient, but not greater than necessary," to meet the goals of 18 U.S.C. § 3553(a).

The defendant has written a letter to the Court for consideration at this resentencing. It is attached hereto as Ex C.

-7-

Respectfully submitted,

The Defendant,
Cheryl DeAndrade

Thomas G. Dennis
Federal Defender

Dated: July 5, 2007

*/s/ Terence S. Ward*
Terence S. Ward
Asst. Federal Defender
10 Columbus Blvd, FL 6
Hartford, CT 06106-1976
Bar No. Ct00023
(860) 493-6260
Email: terence.ward@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing memorandum in aid of sentencing has been mailed to James G. Genco, Assistant United States Attorney, Federal Building, 450 Main Street, Hartford, CT 06103, on this 5th day of July 2007.

*/s/ Terence S. Ward*
Terence S. Ward

# EXHIBIT A

FEDERAL DEFENDER
DISTRICT OF CONNECTICUT
10 COLUMBUS BLVD FL 6
HARTFORD, CT 06106-1976

RECEIVED
2006 JUL 25 P 2:06

THOMAS G. DENNIS
FEDERAL DEFENDER

TEL: (860) 493-6260
FAX: (860) 493-6269

July 21, 2006

The Honorable Alfred V. Covello
Senior United States District Judge
450 Main Street
Hartford, Connecticut 06103

Re: United States v. Deandrade, 3:05CR 286(AVC); 3:01CR 155(AVC)

Dear Judge Covello,

Cheryl Deandrade has two matters pending before the Court. They are: (1) her sentencing in Criminal No. 3:05CR286(AVC) for bank fraud and (2) her violation of supervised release in Criminal No. 3:01CR155(AVC). Those matters are both set for disposition on August 3, 2006.

In an effort to assist the Court and to narrow the issues at the disposition hearing, the parties have reached certain agreements. First, to resolve potentially disputed guideline calculations, the parties have agreed that the enhancement for abuse of a position of trust does not apply. The resulting guideline range is 12-18 months.

Second, the parties agree that with respect to the supervised release violation, the appropriate guideline range is 15-21 months.

Third, as part of the plea agreement, the government agreed not to oppose the defendant's request for the sentences on the two cases to be concurrent.

Fourth, the parties have also reached an agreement, not previously reflected in the plea agreement, that a sentence of 18 months - which represents the top of the range on the bank fraud case and the middle of the range on the supervised release violation - is an appropriate and reasonable sentence. As noted above, the defendant respectfully will request, and the government will not oppose, these sentences running concurrently.

Fifth, the parties agree that the amount of restitution on the bank fraud is $10, 167.80.

The Court already ordered restitution on the case for which Ms. Deandrade was on supervised release. As part of the order revoking that supervised release, Ms. Deandrade expects the Court to order that the outstanding balance be paid.

Finally, the parties agree that no fine is to be imposed since the defendant does not have the means to pay a fine given her lack of employment, impending incarceration, and her restitution obligations.

The parties recognize, of course, that no agreement they make is binding on the Court. The terms of this agreement, however, if accepted by the Court, eliminate the need to litigate guideline issues, departure issues, or other sentencing issues. Moreover, the proposed sentence is ultimately reasonable within the meaning of 18 U.S.C. 3553(a) and requires no departure.

Thank you for your consideration of this agreement. If you have questions or would like to discuss these issues prior to the sentencing hearing, the parties would be happy to assist the Court.

Very truly yours,

Terence S. Ward
Assistant Federal Defender

cc: James G. Genco, AUSA

-2-

# EXHIBIT B



**Wheeler Clinic**
fostering positive change

April 18, 2006

The Honorable Judge Alfred V. Covello

Re: **Cheryl Deandrade**
D.O.B. 11/19/60

The above mentioned client has been in regular attendance for individual treatment and medication management at the Wheeler Clinic, beginning May 2005, to present.

Treatment planning is focused on symptoms of anxiety and depression, panic disorder with agoraphobia, impulse control disorder, systemic family issues and trauma related to past incarcerations. Cheryl's work has been consistent with excellent follow through of tasks. She responds well to skills based on cognitive behavioral therapy and is quick to review all materials and read any books that are recommended.

Goal setting for this treatment episode has focused on redefinition of self, reshaping of old behaviors that stem from a history of low self-worth and some atypical family dynamics. Statements demonstrate strong accountability for past actions along with motivation for change. Cheryl has good insights into triggers that contribute to high anxiety and panic reactions. Skills applications have improved her emotional management resulting in reduced reactivity. Her anxiety manifests itself in problems with impulse control and use of self mutilating behaviors, such as hair pulling and picking at face, that are painful in the moment and support relief of painful emotions. Medication management is effective in control of anxiety. It is strongly recommended that this regimen be continued.

Cheryl has good insights into behavioral changes needed for avoidance of future offenses and effective management of her emotions. She is motivated by a strong desire to fulfill all legal obligations and move toward her life transition of normalization of routine with regular employment and healthy interpersonal relationships. Cheryl is bright, quick to grasp cognitive challenges and consistent with follow through of tasks.

During the treatment process Cheryl was hired, given good reviews and eventually promoted to a supervisor position. This appears to have supported improved self-esteem and empowerment to speak up about family issues with some resolve.

Cheryl will benefit from continued psychotherapeutic supports for generalization of skills to daily life.

Please feel free to call me at (860) 793-3882 with any questions that you might have.

Sincerely,


Jill R. Cristo, L.M.F.T.
Program Coordinator/Mental Health
Department of Adult Services

91 Northwest Drive · Plainville, CT 06062 · Tel: 860-793-3500 · Fax: 860-793-3520 · www.wheelerclinic.org

# EXHIBIT C

June 28, 2007

Dear Judge Covello:

I am really sorry for the crimes I have committed. This time though I was sent to Danbury Federal Prison Camp and unfortunately there is not a lot to do so I had the opportunity to think and reflect on what I have done.

I would like the Court to know that there is no one at fault here but me. My selfishness, my greediness and my need for love were the triggers that landed me in Prison. I have ruined so many lives and cost the Government, my victims and my family so much emotional and financial pain. I have lost so many loved ones along the way because of my fraudulent behavior. The trust that I had gained from family, friends and my peers throughout my life is gone.

There isn't a day that goes by that I don't punish myself for all the suffering I have caused to so many people. It is unfortunate that it has taken me so long to understand what my greed and selfishness has actually done.

I use to try and justify my actions in different ways and use to make excuses, but I have come to accept that I am the only one to blame. No one else. There are no excuses, just my selfishness, greed and ignorance.

I can truly say that I now am comfortable with myself and know my triggers. I am comfortable saying "no" when I don't have anything to give and am comfortable asking for help when I need it.

I can honestly say that I am on the path of acceptance.

Currently at Danbury FPC there is no one on one therapy. One of the things I need and want upon my release is to continue my therapy, which I had to end upon my start of incarceration. There is rehabilitation here at Danbury for drug related crimes, but none for white collar crimes. The only programs they offer for rehabilitation, other than the Drug Program are GED and minimal pre-release classes. I have taken all of the required informational pre-release classes three months into my sentence. Therefore, all that Danbury has to offer for rehabilitation I have completed.

As stated previously, there is no one on one therapy that the Bureau of Prison recommends for me, so unfortunately besides all of the therapeutic hand-outs and informational "homework" so to speak that I had completed with Jill Cristo my therapist from the Wheeler Clinic, while I was awaiting sentencing, is what I am utilizing to help me through my incarceration.

I need for you to know Judge Covello, that even though it has taken a very long time, I have finally "gotten it".

    While it is going to take some time to gain back respect from my family, the community, the Government and you Judge Covello I would like you to know that I am confident that I am definitely more educated in my thinking and behavior and with continued therapy will never be a burden to society again.

    I would respectfully ask you Judge Covello to allow me the opportunity to prove myself by releasing me after serving an eighteen months sentence to assimilate into society, honor my restitution and give back to the community in any way that the Courts deem appropriate.

    Thank you very much for your time

                              Cheryl Lynn DeAndrade